IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BASSEY ARCHIBONG ESSIEN,

    Plaintiff,

  v.

CHEVRON CORPORATION,

    Defendant.

                                 /

No. C 17-03503 WHA

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS AND DENYING MOTION FOR A MORE DEFINITE STATEMENT**

## INTRODUCTION

In this *pro se* employment discrimination action, defendant Chevron Corporation moves to dismiss or, in the alternative, for a more definite statement. For the reasons herein, the motion to dismiss is **GRANTED IN PART AND DENIED IN PART**. The motion for a more definite statement is **DENIED**.

## STATEMENT

The following is taken from the allegations set forth in *pro se* plaintiff's complaint. Plaintiff Bassey Archibong Essien started with Chevron Corporation in 2002. Since roughly 2004, he worked as an Application Support Analyst. In 2012, Alfred Duluyaya started as Essien's supervisor. Essien got assigned to help Duluyaya transition onto the team, providing training and generally bringing him up to speed. Allegedly, Duluyaya found fault with Essien

once he found out he was Nigerian.  Essien was the only Nigerian on his team of four full-time employees and a few other contractors (Dkt. No. 1 at 6).*

Essien alleges that Duluyaya took adverse actions against him because of his national origin, age, and disability.  Specifically, Essien alleges that Duluyaya pulled him off of work projects without explanation and replaced him with other employees — including one instance in which Essien had occupied a position for the previous three years.  Essien also alleges that Duluyaya prevented him from being hired for a position by informing another employee on Essien's team about the opportunity, inviting him to apply, and then actively campaigning on his behalf.  In March 2012, when Essien's name was recommended as one of two analysts to provide application support in Nigera, Duluyaya allegedly replaced him with another team member, despite the fact that Essien had been providing this sort of support for different customers since 2010.  Essien further alleges that Duluyaya harshly criticized his work, reprimanded him unwarrantedly, refused to allow Essien to take his lunch later than 10:30 a.m., and forged Essien's signature on his performance evaluation (Dkt. No. 1 at 6–8, 11–20).

For three years, Essien lodged complaints with Duluyaya's supervisor, Lori Wong, in an attempt to resolve his issue with Duluyaya, but to no avail.  In December 2014, he made a request to HR that he report to another supervisor and was told that he would hear back but never did.  He also sought help from Chevron Ombuds and its internal mediation team.  These efforts, however, likewise failed to resolve his problems with Duluyaya (Dkt. No. 1 at 20–21).

According to Essien, a few months after a dispute resolution meeting with Chevron, they sent him a layoff letter and asked him to return everything in his possession by mail.  In June 2015, Essien filed an EEOC charge of discrimination based on national origin and retaliation.  Chevron fired him in October 2015.  Essien then filed another EEOC charge in April 2016, alleging retaliation.  This charge was accompanied by an EEOC intake questionnaire which

---

* Chevron claims in a footnote that Essien has in fact sued the wrong company, stating that Essien was actually an employee of Chevron U.S.A. Inc. (Dkt. No. 27 at 3).  It does not, however, move to dismiss on these grounds.  It has informed Essien that it believes he has named the wrong party in his complaint.  Essien is at liberty to seek leave to amend his complaint to name a different defendant if he sees fit.  If it turns out he sued the wrong entity, then he will lose.

2

Essien signed and submitted to the agency, in which he checked boxes indicating he was discriminated against on the basis of race, age, disability, national origin, color, and that he was retaliated against. In May 2017, the EEOC dismissed his June 2015 charge of discrimination based on national origin and retaliation and notified Essien of his right to sue (Dkt. No. 17-1, Exhs. A, B; Dkt. No. 1 at 21).

Essien filed this complaint in June 2017, alleging claims of discrimination under Title VII, the ADA, and the ADEA, including: (1) discrimination based on race and national origin; (2) age discrimination; (3) disability discrimination/disparate treatment; (4) disability discrimination/failure to provide reasonable accommodation; (5) hostile work environment created by supervisor; (6) hostile work environment created by co-workers; and (7) retaliation. Defendant Chevron moves to dismiss all claims under FRCP 12(b)(1) and 12(b)(6), or, in the alternative, moves for a more definite statement under FRCP 12(e) (Dkt. No. 17).

## ANALYSIS

### 1. LACK OF SUBJECT-MATTER JURISDICTION.

Defendant Chevron moves to dismiss Essien's age discrimination and disability discrimination claims for lack of subject-matter jurisdiction. "To establish federal subject matter jurisdiction over an employment discrimination claim, a plaintiff must have raised that claim or a 'like and reasonably related' claim in an administrative action." *Yamaguchi v. United States Department of the Air Force*, 109 F.3d 1475, 1480 (9th Cir. 1996). This "administrative exhaustion" requirement applies to Title VII claims, as well as those brought under the ADEA and ADA. *See* 29 U.S.C. 626(d); 42 U.S.C. 12117(a).

A claim is reasonably related to an administrative claim when it can "reasonably be expected" to grow out of an investigation into the claim before the EEOC. *Yamaguchi*, 109 F.3d at 1480. In *Yamaguchi*, our court of appeals reversed the district court's finding that the plaintiff had failed to exhaust her alleged sex discrimination claim where the EEOC had only investigated her sexual harassment claim. It found that the allegations in the paragraph following her sexual harassment claim "presumably go to her sex discrimination claim. While less than clear and complete, her charge satisfies the liberal requirement of a 'like and reasonably

related' administrative claim." *Ibid.* The court concluded that an investigation into the sex discrimination claim could have reasonably been expected to grow out of the EEOC's sexual harassment investigation, thus giving the district court jurisdiction to hear both claims. *Ibid.*

Here, Essien filed a charge of discrimination with the EEOC in June 2015, alleging retaliation and discrimination based on national origin. Contained in his EEOC charge are several statements about his national origin being the reason he was not promoted, but nothing related to his age or any disability. Essien's April 2016 EEOC charge alleging retaliation also lacks any such references. He alleges only that, "I believe I have been retaliated against for my participation in protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended."

Essien's charges filed with the EEOC are not "like or reasonably related" to his claims of age or disability/disparate treatment discrimination. Nor could it have been reasonably expected that an investigation into these new charges would grow out of his charges of retaliation or discrimination based on national origin (Dkt. No. 17-1 Exhs. A, B).

Essien did, however, submit an intake questionnaire to the EEOC on April 21, the same date as his 2016 charge, in which he checked boxes indicating he was discriminated against on the basis of race, age, disability, national origin, color, and that he was retaliated against. He provided no further factual allegations in the questionnaire relating to any of these claims with the exception of his failure to reasonably accommodate and retaliation claims. Specifically, Essien checked boxes indicating he has a disability, that he takes medications for it, and that he asked his employer for changes or assistance to do his job because of his disability. He also typed in the spaces provided that he asked his employer for assistance in 2014, both verbally and in writing. Whether Essien's failure to reasonably accommodate claim could have reasonably been expected to grow out of his retaliation claim is irrelevant, however, because he brought this administrative action more than 300 days after the alleged employment practice. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 109–10 (2002). Because Essien was barred from seeking administrative relief for his alleged disability discrimination, he may not seek relief from the court.

4

Essien is also precluded from now bringing administrative charges for age or disability/disparate treatment discrimination. From the date of the alleged employment practice, employees must file charges with the EEOC within 180 or 300 days, depending on the state. *See id.* at 109–10. Here, Essien bases his age discrimination claim on three separate employment practices, the most recent of which is Chevron's failure to promote him in February 2015. As to Essien's disability discrimination claim, his disparate treatment allegations all took place in 2013, and is likewise time-barred. Essien may no longer file these charges with the EEOC, and allowing him to amend these claims would be futile.

Because Essien has failed to exhaust his administrative remedies, defendant's motion to dismiss his second, third, and fourth claims for age and disability discrimination is **GRANTED**. These claims are **DISMISSED WITH PREJUDICE** as the court lacks subject-matter jurisdiction over these claims and amendment would be futile.

### 2. ESSIEN PLEADS ENOUGH FACTS TO STATE THREE DISTINCT CLAIMS.

To survive a motion to dismiss, plaintiff's complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the party asserting it pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Conclusory allegations or "formulaic recitation of the elements" of a claim, however, are not entitled to the presumption of truth. *Id.* at 681.

"[Courts] have an obligation where petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt." *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). "A district court should not dismiss a *pro se* complaint without leave to amend unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment." *Ibid.*

Defendant moves to dismiss Essien's remaining claims of discrimination based on national origin, hostile work environment, and retaliation. This order addresses these arguments in turn.

## A. Discrimination Based on National Origin.

To survive this motion, Essien must plead only enough facts to plausibly show: "(1) that he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably." *Leong v. Potter*, 347 F.3d 1117, 1124 (9th Cir. 2003) (citation omitted). Defendant argues that Essien fails to state a claim for discrimination based on either race or national origin because Essien does not "demonstrate that similarly situated individuals outside of his protected class were treated more favorably than him" and because he has failed to establish "that he was qualified for the various positions and projects that he believes [] Daluyaya assigned to other team members" (Dkt. No. 17 at 11). Defendant's arguments are unpersuasive.

Essien alleges that he was "the only Nigerian in the team of four full time employees and few other contractors," a fact that he specifically disclosed to his supervisor, Duluyaya (Dkt. No. 1 at 6). This allegation shows that Essien was part of a protected class, which also lays the foundation for the fourth element of his claim. Essien also claims that he was discriminated against on the basis of race, but provides no factual allegations to support this claim. Essien has satisfied the first element of his claim with respect to his national origin, whereas his race discrimination claim fails.

As to whether he was qualified for his position, Essien alleges that he had been in his position for eight years before Duluyaya was hired as his supervisor, after which he was pulled from the "Law Function Important Meetings support" and the lead role he had in creating the SAP Business Objects Analytics report — after having already created some of the reporting models and templates — without explanation. Moreover, Essien alleges that in March 2015 he was one of two analysts recommended to provide support for a core Law-IT application being deployed in Nigeria, for which he had "[more] experience in supporting the application than anyone in [his] team because [he has] specialized background and [had] been supporting this application during its deployment since 2010" (Dkt. No. 1 at 7–8). However, "Duluyaya deliberately replaced [Essien] with another team member who does not have the requisite

6

experience in the application nor the background to understand the culture in the target country of Nigeria" (Dkt. No. 1 at 8). Duluyaya also, without explanation, allegedly replaced Essien as the Training Coordinator on the Learning Management System, a role he had filled for the previous three years. These allegations support the required elements that Essien both was qualified for his position and similarly situated individuals were being treated more favorably. Defendant argues that Essien fails to "allege in what ways he was qualified for the job" (Dkt. No. 17 at 11). Essien, however, has sufficiently alleged his familiarity with and experience in these roles, enough to show that he is qualified for the positions.

Defendant further argues that Essien fails to allege any facts that his race or national origin were motivating factors for any of the alleged adverse employment actions against him. On the first page of his claim, however, Essien specifies the adverse employment actions he was subjected to, and underneath checked the boxes marked "race or color" and "national origin" as the "sole reason or motivating factor for [these] action[s]" (Dkt. No. 1 at 5). Moreover, Essien alleges that his "friction with Mr. Duluyaya began . . . because when he found out I was a Nigerian during a conversation I had with him, although he made no comment, his reaction towards me and his conduct towards me has left me in no doubt that he deplores the fact that I am a Nigerian" (*id.* at 6). Essien has alleged enough facts to support his national origin discrimination claim. With respect to the first claim for relief, defendant's motion is **DENIED**.

### B. Hostile Work Environment.

In his fifth and sixth claims for relief, Essien alleges two distinct claims of hostile work environment — one based upon the actions of his supervisor, the other based upon the actions of his co-workers (Dkt. No. 1 at 16–23). In determining if a work environment is so hostile as to violate Title VII, courts consider "whether, in light of all the circumstances, the harassment is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *McGinest v. GTE Service Corp.*, 360 F.3d 1103, 1112–13 (9th Cir. 2004). "Simply causing an employee offense based on an isolated comment is not sufficient to create actionable harassment under Title VII," but "[i]t is enough if such hostile

conduct pollutes the victim's workplace, making it more difficult for her to do her job, to take pride in her work, and to desire to stay on in her position." *Ibid.*

Defendant argues that Essien insufficiently alleges his co-worker claim. Indeed, the only allegations Essien makes with respect to his co-workers is that "some Law-IT employees circulated rumors that [Essien] was out because he was impacted by the Chevron Alpha project" (Dkt. No. 17 at 17). As defendant notes in its reply, Essien did not address the co-worker claim in his opposition (Dkt. No. 27 at 4–5).

Essien's allegations regarding his co-workers are insufficient to support a hostile work environment claim. He fails to allege enough facts to show that the harassment he received from his co-workers was "sufficiently severe or pervasive" to alter the conditions of his employment. *McGinest*, 360 F.3d at 112–13.

Defendant also moves to dismiss Essien's claim that his supervisor created a hostile work environment. Specifically, defendant argues that Essien has not shown that Daluyaya's conduct was severe or pervasive enough to constitute a hostile work environment under Title VII. Defendant argues that Essien has only claimed five allegedly hostile incidents involving Duluyaya. These include: (1) Duluyaya's criticism of Essien's qualifications for another job; (2) Duluyaya's refusal to permit Essien to take a late lunch; (3) Duluyaya reprimanding Essien for allocating too much time to a project; (4) Duluyaya making a false comment in Essien's performance evaluation about the delayed completion of a task; and (5) Duluyaya's alleged forgery of Essien's signature on a negative performance evaluation. Defendant, however, ignores other incidents referred to in the complaint. For instance, Essien also alleges that Duluyaya pulled him off of work projects, without explanation, and replaced him with other members of his team — including one instance in which Essien had occupied that position for the previous three years. Essien also alleges that Duluyaya prevented him from being hired to another position by informing another employee on Essien's team about the opportunity, inviting him to apply, and then actively campaigning on his behalf. When Essien's name was recommended as one of two analysts to provide application support in Nigera, Duluyaya allegedly replaced him with another team member, despite the fact that Essien had been

8

providing this sort of support for different customers since 2010 (Dkt. No. 1 at 6–9, 11–12, 14, 17–21, 23).

Essien need not prove all the elements of his claim at this stage but must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Essien alleges enough facts to allow a court to draw the reasonable inference that Duluyaya's hostile conduct and harassment was severe and pervasive enough to have created a hostile work environment. Defendant's motion to dismiss this claim is **DENIED**.

### C. Retaliation.

Defendant next moves to dismiss Essien's claim of retaliation. For Essien to survive this motion he must sufficiently plead facts which show that: "(1) he engaged in a protected activity; (2) he suffered an adverse employment decision; and (3) there was a causal link between the protected activity and the adverse employment decision." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002). Defendant concedes that Essien engaged in a protected activity and suffered an adverse employment decision, but argues that he fails to plead enough facts to show a causal link between his complaints and Daluyaya's refusal to promote him or his termination in October 2015 (Dkt. No. 17 at 20). As our court of appeals has recognized however, "in some cases, causation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Id.* at 1065. There are limits as to how much time can pass in order to infer causation, but here not so much time passed between complaints and alleged retaliation as to prevent the causal inference. *See Manatt v. Bank of America, N.A.*, 339 F.3d 792, 802 (9th Cir. 2003).

Essien alleges that in December 2014 he lodged a complaint with Human Resources, and was told he would hear back about his complaint in January 2015 after the holidays but never did. In February 2015, Essien lost a promotion. In other words, only two months passed between the protected activity and the alleged retaliation.

In late April, Essien attended a dispute resolution meeting with Arnie, the HR representative, Lori Wong, Daluyaya's immediate supervisor (with whom he had lodged several unsuccessful complaints), and the IT Manager. When the meeting failed to resolve the

Duluyaya-Essien issue, he filed an EEOC charge in June, alleging discrimination based on national origin and retaliation. Chevron fired him four months later in October (Dkt. No. 1 at 5, 20–21).

Contrary to Chevron, these events fell close enough to the allegedly retaliatory action to infer causation. Essien's allegations plausibly show a causal link between his December 2014 complaint and his February 2015 promotion denial. His allegations also plausibly suggest a causal link between his June 2015 EEOC charge and his October 2015 termination. Essien will be allowed to further develop his claim through discovery and investigation. We must construe the pleadings liberally to afford him the benefit of any doubt. *See Akhtar*, 698 F.3d at 1212.

Essien has alleged sufficient facts to state a claim for retaliation. Defendant's motion to dismiss this claim is **DENIED**.

### 3. CHEVRON HAS SUFFICIENT NOTICE OF CLAIMS AGAINST IT.

Defendant moves for a more definite statement in the alternative to dismissal. "If a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Rule 12(e) before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Defendant claims it "simply cannot discern the specific adverse employment actions that Plaintiff premises his claims [on] or which factual allegations support which claims" (Dkt. No. 17 at 21). Defendant's argument is unconvincing. Each of Essien's distinct claims appear on a pre-typed form, and his inserted factual allegations are discernable. Despite its purported need for a more definite statement, defendant has managed to respond to each of Essien's claims, and although Essien's allegations are somewhat disjointed, they provide defendant with sufficient notice of the claims against it. Defendant's motion for a more definite statement is therefore **DENIED**.

## CONCLUSION

The second, third, fourth, and sixth claims are **DISMISSED**. Because Essien failed to exhaust his administrative remedies, the second, third, and fourth claims may not be re-plead in an amended complaint. Defendant's motion to dismiss the first, fifth, and seventh claims is **DENIED**. Defendant's motion for a more definite statement is **DENIED**. Essien shall have until

**NOVEMBER 30** to file a motion, noticed on the normal 35-day calendar, seeking leave to amend solely as to the hostile work environment created by co-workers claim, as it is the only dismissed claim over which the court has jurisdiction. A proposed amended complaint must be appended to this motion. Essien must plead his best case. The motion should clearly explain how the amended complaint cures the deficiencies identified herein and it should include as an exhibit a redline or highlighted version of his complaint identifying all changes.

**IT IS SO ORDERED.**

Dated: November 13, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE